Minsk all, 0. J.
The suit below was an action in ejectment brought by the children of Edward A.Peasley, Flora Archer and Willi am E. Peasley, against William Broclcschmidt, to recover- the possession of some twenty acres of land, claiming to be the owners of it, — situate in Montgomery county. The defendant in his answer denied the averments of the petition; and, in an amended answer, claimed that the plaintiffs were estopped from setting up their claim by a judgment rendered in his favor in a suit to quiet title instituted in 1890, to which they were made parties as “the unknown heirs of Edward A. Peasley.”
The plaintiffs claim title under the will of their grandfather, Aaron M. Peasley, admitted to probate April 29, 1837, he having died in that year. The provisions of the will applicable to the case are as follows :
“I devise to my son Edward A. Peasley all the rest and residue of said tract of land as purchased of said Brown, * * * the whole to the said Edward and his heirs in fee simple * * * I hereby in explanation declare it to be my will that the parcels of land herein-before devised to my two sons, Theodore and Edward, is to be to them respectively during their natural lives, but so that they nor either of them cannot in their lifetime dispose of the same for any longer period than during their respective lives, giving each of them' only a life estate in the land so-devised to *511 them, and after their deaths, the property to be to their respective heirs at law in fee simple.”
The lands in dispute are covered by the devise. Edward A. Peasley died in December, 1893, leaving the plaintiffs as his only children' and heirs.
In 1850 Edward A. Peasley executed a ' mortgage upon the premises to one Shonenberger; it conveyed the land in fee simple to the mortgagee with covenants of warranty to secure an obligation of the mortgagor to the mortgagee. The obligation not having been pérformed suit was brought in 1851 to foreclose it. A decree was taken for the sale of the life estate of Peasley in the land, the land Avas sold to one Sullivan, the sale was confirmed and a deed in fee simple was ordered and made to him by the sheriff. He also had an auditor’s deed made upon a sale of the land for delinquent taxes of the same date of his sheriff’s deed. He at once took possession of the land, Avhieh re1 mained in him and his successors in title down to and including the defendant Avho purchased and took possession in 1885. The suit Avas commenced in 1894. The possession of the defendant and his predecessors from 1852 Avas open, notorious and exclusive and under color of title. These facts are not disputed; and the following questions arise: 1. What estate in the land did Edward A. Peasley take under the will óf his father, Avas it a life estate or a fee simple under the rule in Shelley’s case, the will having been made and probated before this rule was . abrogated by statute in 1840; and, 2, if under this rule he took a fee simple, have the children on the undisputed facts the right to maintain the action? The court of common pleas rendered judgment for the plaintiffs and the judgment was affirmed on error by the cireuit court.
*512 1. As stated, at the time the will of Aaron M. Peasley was made, the rule in what is known as Shelley’s case was still in force as to wills as well as to deeds and other conveyances of land. It was not a rule of construction but of property. The rule is accurately stated by Lane, J., in McFeely v. Moore, 5 Ohio, 466, as follows: “Where the ancestor takes a freehold for life, and by the same conveyance, whether a deed or devise, is limited, either mediately or immediately, to his heirs, the word ‘heirs’ is a word of limitation, not of purchase, and the fee- vests in the ancestor,” citing 1 Rep., 104. See also, King v. Beck, 12 Ohio, 471, and Armstrong v. Zane, 12 Ib., 287.
The rule is «said to be of feudal origin, and was intended to secure to lords the fruits incident to inheritances ; but it was also not without other reasons of considerable force. (Perrin v. Blake, Harg. Tracts, 493.) In the limitation of estates it was felt among other things to be a matter of importance that there should be words to which a definite meaning could be attached to avoid the confusion and uncertainty that would otherwise arise, and for the purpose of designating the limitation of a fee simple, the largest estate a freeholder could have in lands, the word “heirs” was adopted, so that when an estate was made to one and his heirs, he acquired the full and absolute dominion over the land, and could dispose of it as he saw fit. The heirs acquired no vested interest in the estate; they had a mere expectancy, or the right to inherit the land at his death if he had not disposed of it in his lifetime by deed or will.
In the application of the rule the intention of the testator, as .to. the estate to be taken by the ancestor has never been a. matter of consideration. It is said. *513 by Justice Blackstone in Perrin and Blake: “I believe there never was an instance when an estate for life was expressly devised to the first taker, that the devisor intended he should have anything more. But if he afterwards gives an estate to the heirs of the tenant for life, it is the consequence or operation of the law that in this case supervenes his intention and vests a remainder in the ancestor: which remainder, if it be immediate, merges his estate for life, and gives him the inheritance in possession; but if mediate only, by reason of some interposing estate, then it vests the inheritance in the tenant for life, as a future interest, to take effect in possession when the interposition is determined. And therefore it has frequently been adjudged, that though an estate be devised to a man for life only,' or for life et non aliter, or with any other restrictive expressions; yet, if there be afterwards added apt and proper words to create an estate of inheritance in his heirs, or the heirs of his body, the extensive force of the latter words shall overbalance the strictness of the former, and make him tenant in tail or in fee.”
In conveyances made by,deed the rule was rigidly adhered to, because such instruments were generally made on mature consideration, as well as under the advice of counsel, but it was somewhat relaxed at common law in favor of wills where the same opportunity did not always exist in the case of testators. This relaxation, however, extended only to the use of the word “heirs,” for however explicit the purpose of the testator may be shown to have been, from the language of the will, to give only a life estate to the ancestor, if the estate is then limited, mediately or immediately, to heirs, without anything else in the will to show that he had used the *514 word .“heirs” in a limited sense, the devisee took an estate in fee simple. Thus where the estate is limited to the ancestor for life and at his death to his heirs, with a further limitation, that in case he should die without heirs, then over to his brothers and sisters and their heirs, the limitation over was held to show that he had used the word “heirs” not in its technical sense, but as embracing children only; and so the will in such case was construed as if the .testator had used the word “children” instead of the word “heirs” in connection with the estate limited to the ancestor. The case of King v. Beck, 15 Ohio, 559, determined on a rehearing of the same case, 12 Id., 390, illustrates this rule of construction. There it will be observed, that the devise was to the testator’s brother Christian of all his property,, to be used by him while he lives, and at his death to go to “his heirs or heirs born in lawful wedlock,” and should he die without such heirs, then over to the children of two of his sisters, naming them. This devise over, as the court held, showed that the testator had used the word “heirs” in the sense of children, for if he had used it in its technical sense there could have been no devise over to the children of his two sisters, and the estate would have gone to his heirs general; and although the rule in Shelley’s case then applied to wills, the brother of the testator was held to have .taken a life estate only. One of the four situations pointed out in Perrin v. Blake in which the word “heirs” may be construed as a word of purchase, is where the testator has added fresh limitations, and grafted words of inheritance upon the heirs to whom he gives the estate, whereby it appears that these heirs were meant by the testator to be the root of a new heritance — -the stock of a new descent; and it will be *515 observed that the ease of King v. Beck falls within this category. The judge in delivering the opinion in the case says: “If the estate for life created in the devisee or donee is limited precisely as it would descend at law, the rule in Shelley’s case vests the entire fee in the first devisee or donee.” Such is the fact in the case before us and distinguishes that case from this. The testator first gives to his son Edward an estate for life in the land, and at his death it is to go to his heirs. There is no devise over in case he should die without heirs, nor is there anything in the will to show that he used the word “heirs” in any other than the usual sense in law, except that he gave a life estate to his son, which as we have already shown, in no way affects the application of the rule. On the death of Edward the property is to go precisely as it would at law — to his heirs. It therefore follows that under the will of his father, Edward took a fee simple estate in the land devised to him.
2. We come then to the question whether the action of the plaintiffs can be maintained under the circumstances of the case. We think not. The sheriff’s deed, notwithstanding the fact that a life estate had been ordered sold, was made in pursuance of the order of court, and conveyed to the purchaser the legal title in fee simple; and, without a reformation, the plaintiffs cannot recover the land against one having the legal title. They have but an equity at most. They did not ask for a reformation of the deed, and a recovery on.it as reformed; and, had they done so, the def^daut might have well plead the statute of limitations to such an action. The deed was executed in 1852, and the purchaser then went into possession, and he and his successors in title *516 • down to and including the defendant, have ever since •been in the open and notorious adverse possession of the land claiming title in fee simple.
■ The right to reform the deed accrued to the mortgagor on the execution of the deed, for it deprived him of his reversionary estate in the land, which he might, otherwise, have disposed of for value, although it could only take effect in possession on the termination' of his own life. One who takes in the quality of heir takes no new estate in the land; he simply succeeds to the estate of his ancestor. This is the legal distinction between an heir and a purchaser. When Edward Peasley died in 1893, his heirs simply stepped into his shoes with such rights in regard to the land as he had at his death. They were his real representatives, and if his right to recover the land or reform the deed in any form of action was barred, they Avere likewise precluded from doing so by the same bar. This makes it unnecessary for us to consider any of the other grounds of defense relied on by the defendant below.

Judgment reversed; and judgment on the undisputed facts for the defendant below.

Williams, Burket, Spear and Shauck, JJ., concur; Davis, J., absent.